OPINION OF THE COURT
Walter M. Schackman, J.
Defendant Salomon Brothers, Inc. (Salomon) seeks an order *466 staying this action and compelling arbitration pursuant to the Federal Arbitration Act (FAA) (9 USC § 1 et seq.). Plaintiff, James A. Singer (Singer), alleges causes of action based upon statutory violations of section 296 of the Executive Law of the State of New York and title 8 of the Administrative Code of the City of New York, as well as breach of contract and quantum meruit. Plaintiff seeks reinstatement in his place of employment as managing director with all of the benefits, duties and responsibilities as well as damages for lost compensation and services rendered, severance pay, attorney’s fees and punitive damages.
Plaintiff commenced employment with Salomon Brothers in May of 1982 and was terminated on February 28, 1992. He was employed in the Investment Banking Division as a managing director, and his duties included providing financial, advisory and investment banking services to industrial companies.
On or about February 9, 1989, Singer was diagnosed as having a malignant tumor in his leg, which doctors advised him was likely to be terminal. Singer informed his superiors at Salomon and took a four-week leave for surgery and subsequent rest.
In April of 1989 Singer was transferred to another unit and his compensation was decreased. No complaints were made about his performance or productivity in the workplace. On February 28, 1992, Salomon Brothers terminated Singer’s employment.
Singer alleges that but for his illness, he would not have been stripped of his job responsibilities and later terminated. He maintains that his dismissal was discriminatory and based upon his disability.
The issue before the court is whether Singer’s claims are subject to arbitration or whether they require litigation in a judicial forum.
In connection with Singer’s employment with Salomon as a securities industries representative, plaintiff signed a Uniform Application for Securities Registration (U-4 form), which contained an arbitration clause that required plaintiff to "arbitrate any dispute, claim or controversy that may arise between [himself] and [his] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organization with which [he] register[ed].” Singer was registered with the New York Stock Exchange, Inc. (NYSE) among other exchanges.
*467 In his affidavit plaintiff claims that he never read and was unaware of the arbitration provision contained in the U-4 form, nor was it brought to his attention. Further, he did not negotiate the terms or provisions contained in the form. However, the court here cannot void the arbitration clause for unconscionability. By his own account, Singer is an experienced businessperson, as evidenced by both his years and level of compensation in the field of investment banking. He cannot be heard to say that he was coerced or defrauded into signing such a form.
Plaintiff contends that his discrimination claims under New York Human Rights Law are not arbitrable and do not fall under the auspices of the FAA because the U-4 form is part of his employment contract. Section 1 of the FAA provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in * * * interstate commerce.” (9 USC § 1.) Singer was engaged in extensive interstate commerce in his work at Salomon. However, the United States Supreme Court has recently held that such an arbitration clause contained in a securities registration form is not a contract with the employer, but "a contract with the securities exchanges.” (Gilmer v Interstate/Johnson Lane Corp., 500 US —, —, n 2, 111 S Ct 1647, 1651-1652, n 2.)
And while Singer’s complaint does not allege a violation of the Federal Americans with Disabilities Act of 1990, New York courts must apply the FAA when plaintiff makes a State law claim. In Singer v Jefferies & Co. (78 NY2d 76, 81), plaintiff’s State Human Rights Law claim was required to be arbitrated. The Singer Court opined (at 81), "[t]he arbitration agreement at issue here is governed by the Federal Arbitration Act [which] applies to any written agreement to arbitrate * * * [where interstate commerce is involved] (9 USC §2) [and] include[s] * * * disputes arising out of employment in the securities market”. Thus, like in Gilmer (supra), the U-4 form was deemed to be a contract with the securities exchanges, not the employer.
Plaintiff argues that congressional intent is relevant where a party seeks to invoke the FAA with respect to disability claims. Singer claims that Congress did not intend alternative dispute resolution mechanisms to "supplant * * * the remedies provided by [the] Act.” (HR Rep No. 485 [III], 101st Cong, 2d Sess, reprinted in 1990 US Code Cong & Admin News 499.) *468 However, a plain meaning reading of section 513 of the House Report concerning the legislative history of the Americans with Disabilities Act clearly shows that, "[t]his section encourages the use of alternative means of dispute resolution [mechanisms] * * * including] * * * arbitration.” (Ibid, [emphasis supplied].) Arbitration is not only authorized by law but also fulfills the strong public policy favoring a decrease in the courts’ burdensome case load. While there is also a public interest in adjudication of delicate claims such as discrimination cases, the court must balance the competing interests. A plethora of cases, both Federal and New York State, support such arbitration of discrimination cases. (Mago v Shearson Lehman Hutton, 956 F2d 932 [9th Cir 1992]; Benestad v Interstate/Johnson Lane Corp., 946 F2d 1546 [11th Cir 1991]; Reid v Goldman, Sacks & Co., 154 Misc 2d 756; Barth v Cazenove, Inc., NYLJ, May 4, 1992, at 29, col 2 [Sup Ct, NY County].)
Singer fears that the NYSE arbitrators have no expertise in the field of employment discrimination and are inevitably biased in favor of the investment banking firms. Here, plaintiff carries the burden of proof in demonstrating that arbitration would be an inadequate forum to negotiate his claims. (Gilmer v Interstate/Johnson Lane Corp., supra.) Plaintiff has not met that burden. Arbitration as a method of alternative dispute resolution has become an acceptable and respectable means of dispensing justice. (Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, 473 US 614 [1985].) Further the Gilmer court found that NYSE arbitration rules provide sufficient safeguards against bias as well as a fair discovery process in discrimination cases. NYSE arbitrators also have the power to fashion other equitable relief: "[T]he NYSE rules applicable here do not restrict the types of relief an arbitrator may award, but merely refer to 'damages and/or other relief.’ ” (Supra, 500 US, at —, 111 S Ct, at 1655.) Plaintiff may still seek punitive damages. When arbitrable claims may be severed from nonarbitrable ones, they may be separated and the arbitration proceedings may be held. (Reisfeld & Son Import Co. v S.A. Eteco, 530 F2d 679.) At the conclusion of the arbitration, this court may award punitive damages, if proper. (Chisholm v Kidder Peabody Asset Mgt., Sup Ct, NY County, May 7, 1992, index No. 33022/91.)
Accordingly, defendants’ motion to stay this action and compel arbitration is granted.